WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jesenia Villalobos,<br><br>          Plaintiff,<br><br>v.<br><br>Merrill Lynch,<br><br>          Defendant. | No. CV-24-02139-PHX-JJT<br><br>**ORDER** |

At issue is Defendant Merrill Lynch's Amended Motion to Dismiss with Prejudice (Doc. 8, MTD), to which *pro se* Plaintiff Jesenia Villalobos filed a Response (Doc. 13, Response) and Defendant filed a Reply (Doc. 21, Reply). Plaintiff has also filed a Sur-Reply (Doc. 25, Sur-Reply) and a separate Motion for Settlement Conference (Doc. 28). The Court finds these matters appropriate for resolution without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court grants Defendant's Motion to Dismiss with Prejudice and denies as moot Plaintiff's Motion for Settlement Conference.

**I.    Background**

On July 9, 2024, Plaintiff initiated this action in state court, wherein she filed a complaint alleging workplace harassment and employment discrimination. (Doc. 1-1 at 4–5.) On August 21, 2024, Defendant removed this case to federal court based upon federal question jurisdiction.[1] (Doc. 1 ¶ 8.) Although Plaintiff's complaint does not identify a

---

[1] Plaintiff never properly served a complaint on Defendant. (Doc. 1 ¶¶ 2–3, 6.) Although Defendant does not argue insufficient service of process as a defense in its MTD, Defendant does note that Plaintiff's defective service rendered the August 21 removal timely. (Doc. 1 ¶ 11.) The Court perceives no issue with Defendant's assertion.

specific cause of action, removal was proper because supporting documentation submitted by Plaintiff with her complaint indicates that her claim arises under federal law. *See* 28 U.S.C. § 1446(b)(3) (permitting consideration of "other paper[s]" in the assessment of subject matter jurisdiction). Specifically, Plaintiff filed a Determination and Notice of Rights from the federal EEOC indicating that Plaintiff had a right to pursue this lawsuit under federal law. (Doc. 1-1 at 13.) Defendant reasonably surmised that Plaintiff's claim is based in Title VII, and Plaintiff has since confirmed that conclusion. (*See* Response at 4 (stating that Plaintiff's claim arises under Title VII of the Civil Rights Act of 1964).) Therefore, the Court is satisfied that it has jurisdiction over this case.

Plaintiff is apparently an employee of Defendant. Her complaint alleges that, over the course of eight days, a coworker named Jonathon approached her four times. (Doc. 1-1 at 10.) The first time, Jonathan told Plaintiff that she was "beautiful." The second time, he introduced himself, asked for her phone number, and asked if she was married. The third time, he told her that she was "really attractive" and asked for her number again. The fourth time, he approached her desk, but Plaintiff does not allege what he said, if anything. (Doc. 1-1 at 10.) Plaintiff reported Jonathon's conduct to two of her managers but feels that Defendant has not taken the matter seriously, especially considering that she has allegedly been subjected to sexual harassment in the past. (Doc. 1-1 at 10–11.) Plaintiff claims that she has experienced emotional distress, anxiety, worry, and fear, and she requests $295,000 in compensatory damages. (Doc. 1-1 at 11–12.) Plaintiff seeks relief in this lawsuit only from Defendant, not from Jonathon. Defendant has moved the Court to dismiss Plaintiff's complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6).

**II.     Legal Standard**

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v.*

*Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

**III.  Analysis**

As noted above, Plaintiff's complaint does not identify a cause of action. The "law" section of her complaint form is completely blank. (Doc. 1-1 at 11.) In her Response, she submits supporting documentation indicating that she intended to sue Defendant for sex discrimination under Title VII. (Response at 4.) Defendant characterizes Plaintiff's pleading as an assertion that Defendant created a hostile work environment. This characterization is consistent with Plaintiff's claim of sex discrimination, as a hostile work environment arising out of sexual harassment is a form of sex discrimination. *See Fried v.*

*Wynn Las Vegas, LLC*, 18 F.4th 643, 647 (9th Cir. 2021). The Court concurs with Defendant that Plaintiff's complaint ought to be analyzed under the law governing hostile work environments, as the complaint's allegations could not support any other claim against Defendant.

In order to establish the existence of a hostile work environment, Plaintiff must show that "(1) [she] was subjected to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Id.* "[I]t is well established that an employer can create a hostile work environment by failing to take immediate and corrective action in response to a coworker's or third party's sexual harassment or racial discrimination the employer knew or should have known about." *Id.*

Plaintiff has failed to state a viable claim against Defendant for two reasons. First, Plaintiff has failed to show that she was subjected to conduct that could create a hostile work environment. Second, even if she could demonstrate the existence of a hostile work environment, she has failed to allege that Defendant violated the law by not taking appropriate corrective action.

**1.     Hostile Work Environment**

"Courts are to determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir. 2000) (citation and internal quotations marks omitted). "[T]he required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991). In this case, the conduct complained of by Plaintiff was neither pervasive nor severe.

Jonathon allegedly propositioned Plaintiff four times in eight days, which is quite frequent, but Plaintiff does not allege that he spoke to her either before or after that eight-

1  day period. Notably, the last interaction between Jonathon and Plaintiff occurred on
2  May 14, but Plaintiff did not file her complaint until July 9. Based upon the face of the
3  pleading, it appears that Jonathon developed a romantic interest in Plaintiff, pursued that
4  interest for eight days, and then gave up. Although the conduct suffered by Plaintiff could
5  be considered pervasive if viewed through an artificially narrow window, the conduct was
6  not pervasive when viewed in the context of Plaintiff's overall employment relationship,
7  which is the appropriate frame of reference for a claim of hostile work environment.
8  However, even if the Court were to assume *arguendo* that the complained-of conduct was
9  pervasive, it was so lacking in severity that under no circumstances could it satisfy the
10 Ninth Circuit's sliding scale.

11       The "standards for judging hostility are sufficiently demanding to ensure that Title
12 VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S.
13 775, 788 (1998) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80
14 (1998)). Plaintiff alleges that Jonathon told her she was pretty twice, asked for her number
15 twice, asked if she was married once, and approached her desk once. If the Court were to
16 conclude that those allegations state a *prima facie* claim of harassment, the Court would in
17 effect proscribe a person from asking a coworker on a date. The Court does not express an
18 opinion regarding whether a general prohibition on romantic expression in the workplace
19 would be a good or a bad idea, but it is clearly not the law. There is no way to credit
20 Plaintiff's claim without transmuting Title VII into a code of general civility.

21       The upshot of that conclusion is that Plaintiff has failed to show that there was any
22 underlying harassment that Defendant bore a legal obligation to address. The Ninth Circuit
23 has "recognized that an employer's *response* to a third party's unwelcome sexual advances
24 toward an employee can independently create a hostile work environment." *Fried*, 18 F.4th
25 at 650 (emphasis in original). However, in *Fried* and all the cases cited therein, there was
26 some sexual impropriety that undergirded the courts' analyses of the sufficiency of the
27 employers' responses. In *Fried*, a third-party customer asked the plaintiff if he "wanted to
28 have sex and rub the customer's penis" and stated that "it is wonderful to have sex with

another man." *Id.* at 646 (cleaned up). In *Brooks v. City of San Mateo*, 229 F.3d 917, 921–22 (9th Cir. 2000), a serial sexual harasser in the workplace "placed his hand on [the plaintiff's] stomach and commented on its softness and sexiness" and then "forced his hand underneath her sweater and bra to fondle her bare breast." In *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 964 (9th Cir. 2002), the plaintiff was "raped" three times by a third-party business associate. In *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1067 (10th Cir. 1998), two third-party customers told the Plaintiff that "[they] would like to get in her pants," grabbed her hair several times, grabbed her breast, and placed their mouths on her breast.

The Court concludes from these cases that, before an employer can be found liable for failing to appropriately respond to an employee's or a third party's sexual harassment, there first must be an occurrence of sexual harassment. In this case, Jonathon's advances were so lacking in severity that the Court is unsure what response Plaintiff expected or the law demanded. Of course, an employer must handle all allegations of sexual harassment with respect. Receipt of a meritless complaint does not constitute a license to demean or abuse the complainant. A hostile response to even a meritless complaint could itself create a hostile work environment. Here, however, there is no allegation that Defendant responded inappropriately. Because Plaintiff has not demonstrated that there was any sexual impropriety in the first place, Defendant cannot be liable for failing to take the necessary corrective action under Title VII. Plaintiff's claim is therefore subject to dismissal.

### 2. Corrective Action

Even if the Court were to assume *arguendo* that Jonathon did sexually harass Plaintiff, she has still failed to show that Defendant responded improperly. Plaintiff's complaint alleges nothing regarding Defendant's conduct. The totality of the assertions relating to Defendant are that "right after" Jonathon approached Plaintiff's desk, she "made [her] manager [sic] Stephen Thieren and Rosa G. Perez aware" and that "this matter is not taken seriously." (Doc. 1-1 at 10.) Plaintiff has not substantiated her allegation that

Defendant failed to take this matter seriously with a description of what Defendant or any of its agents did or failed to do.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This requirement ensures that "the allegations in the complaint 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006) (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 998 (2002)). Although pleading standards are "relaxed" as applied to *pro se* plaintiffs, there is still a minimum descriptive threshold below which a complaint is invalid. *See McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

Plaintiff's complaint falls far short of Rule 8(a)(2)'s requirement that a pleading contain sufficient allegations to put Defendant on notice of what it is allegedly liable for. The complaint contains adequate information to put a reader on notice as to Jonathon's alleged wrongdoing, but it contains virtually no allegations explaining why Plaintiff believes Defendant is liable to her. Defendant has not been put on notice of what it is expected to answer for. Plaintiff's claim is therefore subject to dismissal on two independent grounds.

**IV.    Leave to Amend**

Defendant urges the Court to dismiss Plaintiff's complaint with prejudice. (MTD at 9.) "Rule 15(a) declares that leave to amend shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted). "In exercising its discretion with regard to the amendment of pleadings, a court must be guided by the underlying purpose of Rule 15—to facilitate a decision on the merits rather than on the pleadings or technicalities." *Eldridge v. Block,* 832 F.2d 1132, 1135 (9th Cir. 1987) (citation and internal quotation marks omitted). However, the policy in favor of allowing amendments is subject to limitations. After a defendant files a responsive pleading or a motion under Rule 12(b), (e), or (f), the propriety of leave to amend is determined by consideration of five factors: "bad faith, undue delay, prejudice to the opposing party,

futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

Futility alone can justify the denial of leave to amend. *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2003). "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). This is especially true of *pro se* pleadings. In general, *pro se* litigants are "entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). The Ninth Circuit is "very cautious in approving a district court's decision to deny pro se litigants leave to amend." *Flowers v. First Hawaiian Bank*, 295 F.3d 966, 977 (9th Cir. 2002). However, even *pro se* pleadings are subject to dismissal without leave to amend where amendment would be futile. *Id.* The Ninth Circuit has approved the dismissal of *pro se* pleadings without leave to amend. *See, e.g.*, *McZeal v. JPMorgan Chase Bank, N.A.*, 735 F. App'x 913, 917 (9th Cir. 2018).

This case presents the rare circumstance where it is appropriate to dismiss a *pro se* pleading without affording leave to amend. Plaintiff received notice of the deficiencies of her complaint in the form of Defendant's MTD. Instead of amending the complaint or submitting a proper rebuttal to Defendant's legal arguments, Plaintiff opted to submit a "Response" that consisted entirely of additional factual information that she believed buttressed her complaint.[2] Plaintiff also received a second notice of the deficiencies of her Complaint in the form of Defendant's Reply. Once again, instead of amending the complaint, Plaintiff filed a Sur-Reply consisting entirely of additional factual information, some but not all of which was repetitious of her Response. Defendant has not moved to strike Plaintiff's Sur-Reply. The Court is thus in the unusual position of having 47 pages

---

[2] Defendant argues that Plaintiff's failure to substantively address the MTD constitutes an independent basis for dismissal. (Reply at 2–4.) Because Plaintiff's complaint is subject to dismissal in any event, the Court does not consider whether it would be appropriate to deem Plaintiff's unresponsiveness as tantamount to a dispositive concession.

of additional facts that Plaintiff believes saves her complaint from Defendant's MTD. Plaintiff's Response and Sur-Reply are therefore, in essence, a proposed amendment in all but name. Because Plaintiff's Response and Sur-Reply do not salvage her complaint, the Court concludes that amendment would be futile and that dismissal with prejudice is appropriate.

Plaintiff's Response and Sur-Reply shed additional light on Defendant's reaction to her allegations of sexual harassment. After Plaintiff decided to work from home to avoid further interaction with Jonathon, she messaged her manager Stephen that she was having trouble logging in to Defendant's network. (Response at 8.) Stephen responded, "Ok so my suggestion is to come in office so we can work to get back up and running tomorrow. Once you can sign in you can head back home." (Response at 8.) In *Fried*, *Lockard*, and other similar cases, the employers were liable for creating a hostile work environment in large part because they directed their employees to return to the situations that had given rise to the complaint of sexual harassment in the first place. *See Fried*, 18 F.4th at 651–52 (citing *Lockard*, 162 F.3d at 1067). Here, however, Plaintiff has demonstrated that Defendant did not force her to return to a workplace environment in which she would likely encounter Jonathon. Instead, Defendant allowed Plaintiff to work from home and facilitated her transfer to a home office. Plaintiff has submitted evidence indicating that her other manager, Rosa G. Perez, was also receptive to Plaintiff's allegations of sexual harassment. Rosa asked if Jonathon was a "black guy with dreads," to which Plaintiff responded affirmatively. (Response at 18.) Rosa then clarified that she was asking in order to identify Jonathon to other employees of Defendant for the purpose of addressing Plaintiff's complaint. (Response at 19.) After Plaintiff again confirmed Jonathon's physical appearance, Rosa asked her "[c]omo estas," which is a Spanish question expressing general concern for an interlocutor's well-being. (Response at 19.) Later, Plaintiff messaged Rosa asking if Jonathon had come by her desk. (Response at 23.) Rosa responded that he had not, and she followed up with the commiserative phrase, "[s]mh idk why guys don't know how to accept the word no." (Response at 23.) Finally, Plaintiff submitted evidence of a

follow-up conversation with Stephen in which Stephen indicated that he had investigated Jonathon's identity and had taken steps to procure a new laptop for Plaintiff. (Sur-Reply at 8–9.) Plaintiff responded that Jonathon was no longer working for Defendant, to which Stephen replied, "[w]ell that is good news [t]hat he is no longer with the firm . . . I am glad you can get some relief and ease." (Sur-Reply at 8.) Plaintiff's Response and Sur-Reply not only do not establish that Defendant failed to take appropriate corrective action regarding Jonathon's conduct, but instead indicate that Defendant reacted in a proper manner. Both of Plaintiff's managers were patient, understanding, and receptive to Plaintiff's allegations of sexual impropriety, and both managers conducted an investigation into the affair and assisted Plaintiff in avoiding further contact with Jonathon.

Nothing in Plaintiff's proffered evidence alleges anything further regarding Jonathon's behavior. Thus, it appears that the sum total of his conduct is what Plaintiff alleged in her complaint: four overtures over the course of eight days, none of which were sexually charged or objectively offensive, and none of which involved any physical contact. The remainder of Plaintiff's Response and Sur-Reply consist of impertinencies and information regarding a prior allegation of sexual assault by a woman named Bianca Acevedo, who allegedly worked for Defendant and spanked Plaintiff's buttocks at a Costco in November of 2023. (Response at 11–15, 17; Sur-Reply at 15, 17–20.) Plaintiff does not allege in what way this incident relates to Defendant.

Plaintiff's initial complaint failed to state a viable claim that Defendant is liable to her for creating a hostile work environment. After receiving two notices of her complaint's deficiencies, Plaintiff submitted 47 pages of supporting material, much of it consisting of new or additional facts. These facts demonstrate that Plaintiff's claim is actually more infirm than originally presented. It is clear from Plaintiff's Response and Sur-Reply that Defendant responded appropriately to Jonathon's alleged sexual harassment. The Court is satisfied that any amendment by Plaintiff in this case would be futile and would constitute an unnecessary drain on both Defendant's resources and the public fisc. Therefore, the Court will dismiss Plaintiff's complaint with prejudice.

**IT IS THEREFORE ORDERED** granting Defendant's Amended Rule 12(b)(6) Motion to Dismiss Complaint with Prejudice. (Doc. 8.)

**IT IS FURTHER ORDERED** denying as moot Plaintiff's Motion for Settlement Conference. (Doc. 28.)

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment for Defendant and close this case.

Dated this 24th day of October, 2024.

Honorable John J. Tuchi
United States District Judge